THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH DAVIS, Defendant-Appellant.

First District (1st Division)   No. 1—97—2729

Opinion filed March 15, 1999.

Michael J. Pelletier and Manuel S. Serritos, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle and Lisa Preston, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant Kenneth Davis was found guilty of first degree murder and sentenced to 55 years in prison. He appeals, raising as issues whether: (1) his sentence was proper; (2) the victim impact statements were properly admitted at sentencing; (3) Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995) violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)); and (4) the mittimus was in error. We affirm defendant's conviction and sentence and correct the mittimus.

The following evidence was adduced at trial. Around midnight on

August 25, 1995, Charles Brown died from multiple gunshot wounds. Xenobia Anderson testified that she was standing on the front porch of her house on 59th street in Chicago, across from Hermitage Park on August 25, 1995, at midnight. She saw a man run toward her house from the park and heard someone yell, "get the mother------." She recognized the man from the neighborhood and later identified him as Charles Brown. Another man chased Brown from the park and threw a stick at him. Brown continued running west on 59th Street. Anderson ran into her house and saw and heard gunfire as she looked out her front door. The gunshots came from the parking lot of an abandoned Jewel store, located at the corner of 59th and Woods Streets. When Anderson went to investigate, she found Brown lying facedown in the parking lot.

Leroy Litzey was sitting on the steps of his house, located across the street from the Jewel parking lot. Around midnight, he heard someone yell "get the mother------" and saw three men chase a man. As the man ran through the parking lot, Litzey heard two gunshots and saw the man fall facedown. Then Litzey saw one of the other men stand over the victim and shoot him twice more in the back.

Ronald Gavin testified that he and defendant were playing basketball in Hermitage Park on August 25, 1995, until the lights went out around 10:30 or 11 p.m. Brown came by the park around 10 p.m. Gavin said "[W]hat's up Charley?" and told him that he "looked like a dick boy," which meant that he looked like a detective. Brown left the park but returned 10 minutes later with a knife. He told Gavin, "I got your dick boy," and cut Gavin's arm with the knife. Gavin then ran out of the park. When he saw that Brown was chasing him, he hid behind the abandoned Jewel. He yelled for help but was unsure if anyone responded.

At trial, Gavin was shown his signed written statement, but he stated that it was not what he told the police. According to Gavin, in his statement to the police he said that he yelled to defendant for help and saw defendant chasing the victim with a gun. He had also stated that when he spoke with defendant a few days after the shooting, defendant told him he had "gotten the guy" and that a friend of theirs had gotten rid of the gun. In his grand jury testimony, Gavin related that he saw defendant carrying and firing a chrome .38-caliber gun at Brown. At trial, he explained that he remembered stating that he saw defendant and others chasing Brown through the park, but did not remember admitting that he saw defendant carrying a gun. He further testified that he only heard the shots but did not see them being fired.

Assistant State's Attorney Mitchell Cohen testified that defendant

gave a handwritten statement on September 18, 1995. Defendant said that on August 25, 1995, he was playing basketball in the park with his friends. Brown stopped by and argued with Gavin. Brown left but returned and chased Gavin around the park. Gavin called to defendant for help. Defendant chased Brown out of the park and toward the Jewel parking lot. Defendant saw Gavin get away from Brown, but defendant still continued chasing Brown into the parking lot. When defendant was within 6 to 10 feet of Brown, he pulled out his gun and fired twice. Defendant saw Brown arch his back and stop running, then stagger and fall face forward. Defendant walked over to Brown and, when he was two feet away, he shot him twice more in the back.

The jury found defendant guilty. At sentencing, three victim impact statements were read by the assistant State's Attorney from Barbara Garner, Brown's sister; Timothy Lamont Brown, Brown's brother; and Maurice Clegg, Brown's brother. They asked the trial judge for a harsh penalty and expressed their grief and anger. Brown's mother, Neicy Brown, testified that Brown had been a good person and had been active in his church, and she expressed grief over his loss. After hearing all the evidence, the trial court sentenced defendant to 55 years' imprisonment. The trial court stated that a change in the statute for crimes committed after August 20, 1995, made defendant ineligible for any good-conduct credit.

■ Defendant first contends that the trial court abused its discretion in sentencing him because it gave insufficient weight to the mitigating factors. In order to challenge the correctness of the sentence or any aspect of the sentencing hearing, a written motion must be filed within 30 days of sentencing. *People v. Reed*, 177 Ill. 2d 389, 696 N.E.2d 584 (1997), citing 730 ILCS 5/5—8—1(c) (West 1994). When defendant failed to file a postsentencing motion, he waived the issue for purposes of appeal. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). "[P]lain error is applicable, for example, where consecutive or extended sentences are imposed without legal justification." *People v. Reed*, 282 Ill. App. 3d 278, 281, 668 N.E.2d 51 (1996). The sentencing range of imprisonment for first degree murder is 20 to 60 years. 730 ILCS 5/5—8—1(a)(1)(a) (West 1994). Defendant was sentenced within the statutory range to 55 years in prison. There is no basis in this case for application of the plain error exception. Accordingly, section 5—8—1(c)'s specific requirements, along with goals of judicial economy and a record which includes a sentencing court's reasoned judgment, demand application of the waiver rule.

■ Defendant next asserts that he was prejudiced by the admis-

sion of four victim impact statements at sentencing, in violation of the Rights of Crime Victims and Witnesses Act. 725 ILCS 120/1 *et seq.* (West 1994). Defendant claims that the trial court's error in considering these statements requires the court to grant him a new sentencing hearing. The statutory definition of a "crime victim" includes "a single representative who may be the spouse, parent, child or sibling of a person killed as a result of a violent crime perpetrated against the person killed." 725 ILCS 120/3(a)(3) (West 1994). Defendant argues that the trial court erred because, instead of considering the victim impact statement of "a single representative," it considered the victim impact statements from four people. The four people qualified as crime victims under section 3(a)(3).

The Rights of Crime Victims and Witnesses Act states: "Nothing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case." 725 ILCS 120/9 (West 1994). The Act "was intended as a shield to protect the rights of victims and witnesses forced, through no fault of their own, to participate in the criminal justice system." *People v. Benford*, 295 Ill. App. 3d 695, 700, 692 N.E.2d 1285 (1998). Furthermore, "its provisions may not be used as a sword by criminal defendants seeking appellate relief." *Benford*, 295 Ill. App. 3d at 700. Accordingly, we reject defendant's contention that he is entitled to a new sentencing hearing.

■ Defendant also asserts that he should not be subject to the Illinois "truth-in-sentencing" provisions contained in Public Act 89—404 and codified in section 3—6—3(a)(2)(ii) of the Unified Code of Corrections (730 ILCS 5/3—6—3(a)(2)(ii) (West 1996)) because Public Act 89—404 violates the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 8(d)). Our supreme court has recently struck down Public Act 89—404 on this ground. *People v. Reedy*, 186 Ill. 2d 1 (1999). Accordingly, defendant is correct in his assertion that he is entitled to day-for-day good conduct credit in conformity with the terms of section 3—6—3(a)(2) (730 ILCS 5/3—6—3(a)(2) (West 1994)). Recalculation of the sentence credit to which defendant is entitled is a matter for the Illinois Department of Corrections.

■ Finally, defendant contends, and the State agrees, that the mittimus incorrectly reflects that defendant was convicted of two counts of first degree murder. Defendant was charged with two counts of first degree murder; however, he was only convicted of one count of first degree murder. Pursuant to Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), we correct the mittimus to reflect defendant's one conviction for first degree murder in violation of section 9—1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9—1(a)(1) (West 1996)).

For the foregoing reasons, we affirm the defendant's conviction for first degree murder and correct the mittimus.

Affirmed and mittimus corrected.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.