FIRST JUDICIAL DISTRICT
THIRD DIVISION
March 23, 2011

No. 1-08-2420

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | APPEAL FROM THE |
| | ) | CIRCUIT COURT OF |
| Plaintiff-Appellee, | ) | COOK COUNTY |
| | ) | |
| v. | ) | No. 07 CR 21175 |
| | ) | |
| JAMES HILL, | ) | HONORABLE |
| | ) | JOSEPH G. KAZMIERSKI, JR., |
| Defendant-Appellant. | ) | JUDGE PRESIDING. |

JUSTICE STEELE delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Murphy concurred in the judgment and opinion.

**O P I N I O N**

Following a jury trial in the circuit court of Cook County, defendant James Hill was found guilty of possession of a controlled substance with intent to deliver and delivery of a controlled substance. Based on Hill's criminal history, the trial court sentenced Hill as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2006)) to two concurrent 12-year terms in prison. On appeal, Hill argued: (1) his conviction should be reversed, because the circuit court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007); (2) the circuit court denied Hill's knowing right to testify by refusing to rule on his motion *in limine* to bar the introduction of his prior convictions for impeachment purposes; (3) his sentences are excessive; (4) the mittimus should be corrected to reflect two extra days of credit; and (5) the mittimus should be corrected to reflect

one conviction for possession of a controlled substance with intent to deliver and one conviction for delivery of a controlled substance, rather than two convictions for the offense of manufacture or delivery of a controlled substance.

On June 30, 2010, this court affirmed Hill's conviction and modified the mittimus. *People v. Hill*, 402 Ill. App. 3d 920, 932 N.E.2d 173 (2010). On January 26, 2011, the Illinois Supreme Court denied Hill leave to appeal, but entered a supervisory order directing this court to vacate its judgment and reconsider the appeal in light of *People v. Thompson*, 238 Ill. 2d 598, 939 N.E.2d 403 (2010). Accordingly, we vacate our prior judgment and reconsider Hill's appeal. For the following reasons, we again affirm Hill's conviction and modify the mittimus.

BACKGROUND

The record on appeal discloses the following facts. During jury selection, the trial judge asked the first and second panels of prospective jurors whether they had a problem with the principles of law that the defendant is presumed innocent, that the presumption remains until the State proves the defendant guilty beyond a reasonable doubt, and that the defendant is not required to present any evidence on his behalf. Defense counsel asked the first panel whether it would affect their verdict if Hill chose not to testify. Defense counsel asked the second panel if Hill chose not to testify, "would that fact prevent you from giving him a fair and impartial trial?" The trial judge asked a prospective juror on the second panel about following the instruction that a defendant's decision not to testify should not be considered in reaching a verdict.

The trial judge asked the third panel of prospective jurors whether they understood the defendant is presumed innocent, that the presumption remains until the State proves the defendant

guilty beyond a reasonable doubt, and that the defendant is not required to present any evidence. The trial judge also asked whether they could follow the law as he issued it, even if they personally disagreed with it. The prosecutor asked jurors in this panel whether they could follow the judge's instruction that, if Hill did not testify, they could not consider that fact in reaching a verdict.

The trial judge asked the fourth and fifth panels of prospective jurors whether they had any problem with the principles of law that applied to this case that he mentioned earlier.

Prior to the introduction of evidence, defense counsel moved *in limine* to bar Hill's prior convictions from being introduced as impeachment evidence if Hill testified. The trial court barred use of four convictions, finding them unduly prejudicial. The trial court deferred ruling on the use of four other convictions, stating that the convictions were within the past 10 years, but that the rulings would depend on the nature of Hill's testimony, if any.

At trial, Chicago police officer Saud Haidari testified that on September 22, 2007, he was working as a surveillance officer for an undercover narcotics team assigned to the corner of Francisco Avenue and Flournoy Street. From a distance, Officer Haidari observed Hill engage in several hand-to-hand transactions where Hill tendered an unknown item in exchange for cash. Officer Haidari radioed his observations to his team, after which he observed Hill engage in a transaction with Chicago police detective Rhonda Anderson.

Detective Anderson testified that after she received a description of Hill from Officer Haidari, she drove up to Hill in an unmarked car and told him she needed "two blows," which was a street term for heroin. Hill gave Anderson two pink-tinted Ziploc bags containing a white,

powdered substance, in exchange for a $20 bill, which had a prerecorded serial number. Anderson then radioed her team that she had engaged in a positive narcotics transaction.

Chicago police officer Konior testified that he and two other enforcement officers received confirmation of Detective Anderson's buy and, based on Anderson's description, apprehended Hill. Detective Anderson drove by and confirmed that Hill was the man involved in the transaction. Officer Konior testified that the officers conducted a custodial search of Hill, which resulted in the discovery of five pink-tinted Ziploc bags containing suspected heroin and $97, including the $20 bill used in Detective Anderson's transaction.

Illinois State Police forensic scientist Thomas Halloran testified that the two pink-tinted Ziploc bags Anderson bought from Hill contained 0.5 grams of heroin. Halloran also testified that the five pink-tinted Ziploc bags discovered in the custodial search contained 1.5 grams of heroin.

Hill chose not to testify on his behalf.

The jury found Hill guilty of possession with intent to deliver 1 to 14 grams of heroin and delivery of heroin. Hill filed a motion for new trial, which the trial court denied on July 21, 2008. After hearing evidence in aggravation and mitigation, the trial court sentenced Hill as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2006)) to two concurrent 12-year terms in prison. On August 21, 2008, the trial court denied Hill's motion to reconsider his sentence. Hill filed a notice of appeal to this court the same day. On August 22, 2008, the trial court denied Hill's *pro se* motion to reduce his sentence. Hill filed a second notice of appeal on September 4, 2008. On November 12, 2009, the Illinois Supreme Court entered a supervisory order directing this court to allow the notice of appeal to stand as validly filed.

DISCUSSION

I

On appeal, Hill first argues that the circuit court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) for failing to establish that each prospective juror understood and agreed with the four principles enunciated by our supreme court in *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). The State correctly notes that Hill forfeited this issue by failing to make a contemporaneous objection at trial and raising it in his posttrial motion. *E.g.*, *People v. Banks*, 161 Ill. 2d 119, 143, 641 N.E.2d 331, 342 (1994). Nevertheless, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Aug. 27, 1999). The plain error doctrine operates when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007).

Under both prongs of the plain error doctrine, " 'the burden of persuasion remains with the defendant.' " *Piatkowski*, 225 Ill. 2d at 565, 870 N.E.2d at 411 (quoting *People v. Herron*, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 480 (2005)).

The first step is to determine whether any error was committed. *People v. Hudson*, 228 Ill. 2d 181, 191, 886 N.E.2d 964, 971 (2008). Illinois Supreme Court Rule 431(b) codifies the

Illinois Supreme Court's holding in *People v. Zehr* that four inquiries must be made of potential jurors in a criminal case that " 'go[ ] to the heart of a particular bias or prejudice which would deprive [a] defendant of his right to a fair and impartial jury.' " *People v. Zehr*, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984) (quoting *People v. Zehr*, 110 Ill. App. 3d 458, 461, 442 N.E.2d 581, 584 (1982)).  The version of Rule 431(b) that was in effect when Hill's trial began in May 2008 provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

We examine the record to determine whether the clear mandates of the rule were followed. Compliance with a supreme court rule is reviewed *de novo*.  *E.g.*,  *People v. Lloyd*, 338 Ill. App. 3d 379, 384, 788 N.E.2d 1169, 1173 (2003).

In *Thompson*, the Illinois Supreme Court ruled that Rule 431(b) mandates a specific question and response process:

"The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on his or her understanding and acceptance of those principles." *Thompson*, 238 Ill. 2d at 607, 939 N.E.2d at 410.

Accordingly, the *Thompson* court found error where the trial judge failed to address the third *Zehr* principle and failed to ask jurors whether they not only understood, but also accepted, the presumption of innocence. *Id.*

In this case, the trial judge initially mentioned three of the *Zehr* principles, leaving the fourth as a subject for questioning by defense counsel. However, the fourth and fifth panels – from which six jurors were selected – were only asked a general question about the principles the trial judge mentioned earlier, with *voir dire* on a variety of subjects in the intervening time period. Following *Thompson*, we conclude that the trial judge's method of inquiry here failed to provide each juror an opportunity to respond to specific questions concerning the principles set forth in Rule 431(b).

Having concluded that the trial court erred, we address the issue of whether the error falls into either of the two categories identified in cases like *Piatkowski*. Hill does not argue on appeal that the evidence is so closely balanced that the error alone threatened to tip the scales of justice against him. Rather, Hill argues that the error was so serious that it affected the integrity of the

judicial process and requires automatic reversal. In such cases "[p]rejudice to the defendant is presumed because of the importance of the right involved." *Herron*, 215 Ill. 2d at 187, 830 N.E.2d at 480. However, in *Thompson*, the court held a violation of Illinois Supreme Court Rule 431(b) is not a structural error requiring automatic reversal. *Thompson*, 238 Ill. 2d at 611, 939 N.E.2d at 412. The *Thompson* court further held that, absent evidence of a biased jury, a violation of Rule 431(b) is not reversible under the second prong of plain error review. *Thompson*, 238 Ill. 2d at 615, 939 N.E.2d at 414. In addition, the *Thompson* court declined to impose a bright-line rule of reversal for violations of Rule 431(b). *Thompson*, 238 Ill. 2d at 616, 939 N.E.2d at 415. In this case, as noted in our original opinion, Hill identifies no evidence that the trial court's error resulted in his being tried before a biased jury. Accordingly, we again conclude that Hill has failed to show plain error that would trigger an automatic reversal in this case.

II

Hill next argues that the circuit court denied his knowing right to testify by refusing to rule on his motion *in limine* to bar the introduction of his prior convictions for impeachment purposes. Hill also argues that the decision denied his due process right to "the guiding hand of counsel" and his right to a remedy under the Illinois Constitution. Hill relies primarily on *People v. Patrick*, 233 Ill. 2d 62, 908 N.E.2d 1 (2009), in which our supreme court held that "a trial court's failure to rule on a motion *in limine* on the admissibility of prior convictions when it has sufficient information to make a ruling constitutes an abuse of discretion." *Patrick*, 233 Ill. 2d at 73, 908 N.E.2d at 7. However, the *Patrick* court also held that a defendant fails to preserve for appeal the

issue of the trial court's refusal to rule on the admissibility of his prior convictions, when the defendant does not testify at trial. *Patrick*, 233 Ill. 2d at 77, 908 N.E.2d at 10. In this case, Hill did not testify at trial, thereby forfeiting the issue on appeal.

Hill argues that the forfeiture rule of *Patrick* should not apply because the trial judge had a "blanket policy" of refusing to rule on such motions, which is necessarily arbitrary. Assuming *arguendo* that the trial judge had a blanket policy, we note that the Illinois Supreme Court squarely rejected the argument in *People v. Averett*, 237 Ill. 2d 1, 927 N.E.2d 1191 (2010). The *Averett* court ruled that the trial court's application of a blanket policy of deferring rulings on motions *in limine* did not violate the defendants' constitutional rights to testify or to the "guiding hand of counsel." (Internal quotation marks omitted.) *Averett*, 237 Ill. 2d at 16, 927 N.E.2d at 1200. The *Averett* court also rejected the state constitutional claim, noting that article I, section 12, of the Illinois Constitution (Ill. Const. 1970, art. I, §12) only expresses a philosophy and does not require a certain remedy in any specific form. *Averett*, 237 Ill. 2d at 21-23, 927 N.E.2d at 1203. Hill further argues that the forfeiture rule of *Patrick* is wrongly decided. Although we understand Hill's desire to preserve the issue for review, this court has no power to reverse a decision of the Illinois Supreme Court. *E.g.*, *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440, 892 N.E.2d 994, 1006 (2008) (*stare decisis* requires courts to follow the decisions of higher courts). Accordingly, Hill's arguments on this issue fail.

III

Moreover, Hill argues that his 12-year sentences are excessive, claiming that the trial court failed to consider relevant mitigating factors, including the nonviolent nature of the offenses and Hill's drug addiction. It is well established that the sentence imposed by a trial court is entitled to great deference, and when the sentence is within the statutory limits, it may be disturbed only where the trial court has abused its discretion. *E.g.*, *People v. Bosley*, 233 Ill. App. 3d 132, 139, 598 N.E.2d 355, 360 (1992) (and cases cited therein). So long as the trial court " 'does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense.' " *Bosley*, 233 Ill. App. 3d at 139, 598 N.E.2d at 360 (quoting *People v. Hernandez*, 204 Ill. App. 3d 732, 740, 562 N.E.2d 219, 225 (1990)). The trial court has no obligation to recite and assign value to each factor presented at a sentencing hearing. *People v. Baker*, 241 Ill. App. 3d 495, 499, 608 N.E.2d 1251, 1253 (1993). Where mitigating evidence is presented to the trial court during the sentencing hearing, we may presume that the trial court considered it, absent some indication, other than the sentence itself, to the contrary. *People v. Dominguez*, 255 Ill. App. 3d 995, 1004, 626 N.E.2d 775, 783 (1994).

In this case, based on Hill's criminal history, the trial court sentenced Hill as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2006)), which has a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-8-1(a)(3) (West 2006)). Thus, Hill's sentence falls within the statutory range. Indeed, as Hill acknowledges, even absent the Class X statute, possession with intent to

deliver 1 to 14 grams of heroin is a Class 1 offense with a maximum sentence of 15 years. See 720 ILCS 570/401(c)(1) (West 2006); 730 ILCS 5/5-8-1(a)(4) (West 2006).

Hill's claim that the court failed to consider his drug addiction is incorrect. The transcript of proceedings shows that the trial court did consider the presentence investigation report, which detailed Hill's drug use. The trial judge specifically mentioned Hill's participation in a substance abuse treatment program while incarcerated as a mitigating factor.

Hill's claim that the court failed to consider the nonviolent nature of the offenses is unpersuasive. The trial judge heard the evidence adduced at trial and is presumed to know violence was not involved in this case. The trial judge was also entitled to consider that, in addition to the offenses prerequisite to Class X sentencing, Hill had 14 felony convictions, 13 of which were drug-related – a factor that certainly bears on Hill's potential for rehabilitation.

As the reviewing court, we are not to reweigh the factors considered in determining the defendant's sentence nor are we to substitute our judgment for that of the trial court simply because we would have weighed the factors differently. *People v. Jones*, 376 Ill. App. 3d 372, 394, 876 N.E.2d 15, 34 (2007). In this case, Hill has failed to show the trial court abused its discretion in imposing his concurrent 12-year sentences.

IV

Moreover, Hill argues that this court should correct the mittimus to reflect 304 days spent in custody as credited against his sentence, as opposed to the 302 days noted by the trial court. Hill maintains that he should receive credit for the day of his arrest and the day he was sentenced. The State responds that Hill should receive credit for the former, but not the latter. Pursuant to

Supreme Court Rule 615 (eff. Aug. 27, 1999), a reviewing court may correct the mittimus without remanding the cause to the trial court. See, *e.g.*, *People v. Davis*, 303 Ill. App. 3d 684, 688, 708 N.E.2d 1181, 1184 (1999).

Except for certain specified offenses, a prisoner serving a term of imprisonment receives one day of good-conduct credit for each day of his prison sentence. 730 ILCS 5/3-6-3(a)(2.1) (West 2006). A sentence of imprisonment begins on the date when a defendant is received by the Department of Corrections (Department). 730 ILCS 5/5-8-7(a) (West 2006). There is an apparent split of opinion in this court as to whether, under sections 3-6-3 and 5-8-7 of the Unified Code of Corrections (730 ILCS 5/3-6-3, 5-8-7 (West 2006)), the day of sentencing is included in computing of the presentencing credit.

The Fourth District has held that the day of sentencing is not included in calculating the presentence credit if the defendant is remanded to the Department on the same day, while several cases outside the Fourth District, including this district, have held implicitly in their calculation of presentencing credit that the day of sentencing is included. See *People v. Williams*, 394 Ill. App. 3d 480, 481-82, 917 N.E.2d 547, 548-49 (2009), *appeal allowed*, 235 Ill. 2d 603 (2010) (and cases cited therein). The *Williams* court reasoned as follows:

"After considering the above cases, we find little concrete legal foundation for the split in cases. The cases that include the day of sentencing in the presentencing credit apparently follow the undisputed rule that a portion of a day spent in custody adds a day of credit by implicitly acknowledging that a defendant in custody spends a portion of the sentencing day in custody prior to sentencing. The cases excluding the day of sentencing

-12-

from the credit seek to prevent a defendant from receiving double credit: one day under section 5-8-7 for the portion of the sentencing day spent in presentencing detention and one day under section 3-6-3 for the portion of the same day spent after issuance of the mittimus commences the prison sentence in the Department's legal (if not physical) custody.

We find the concern over double credit persuasive and thus hold that a defendant is not entitled to credit for the day of sentencing if the mittimus is issued effective that same day. Conversely, where the mittimus is not issued or not effective on the day of sentencing, the defendant is not yet in Department custody so that the presentencing credit under section 5-8-7 applies rather than any credit under section 3-6-3. Since defendant's mittimus issued on the day of his sentencing, he is entitled to 287 days' credit [as opposed to 288 days] for presentencing detention." *Williams*, 394 Ill. App. 3d at 483, 917 N.E.2d at 549-50.

Following *Williams*, this court also noted in *People v. Jones*, 397 Ill. App. 3d 651, 656, 921 N.E.2d 768, 771-72 (2009):

"[T]he fact that the Unified Code of Corrections demarcates two separate periods for calculating defendant's sentencing credit suggests that a defendant should not receive credit twice for a single day. In the statute quoted above, subsection (a) delineates the postsentencing credit, while subsection (b) delineates the presentencing credit. 730 ILCS 5/5-8-7 (West 2006). The fact that the two separate subsections set out two different time

periods suggests a legislative intent that a defendant should not receive credit twice for the same day."

In this case, the potential double credit problem does not exist. This court may take judicial notice of the Department's records, because they are public documents. *People v. Peterson*, 372 Ill. App. 3d 1010, 1019, 868 N.E.2d 329, 336 (2007). Here, the Department's records show an admission date of July 22, 2008 – the day after Hill was sentenced. Accordingly, we conclude that Hill is entitled to presentencing credit for the date of sentencing. Therefore, we order the mittimus corrected to reflect 304 days of presentencing credit for time served.

V

Finally, the mittimus in this case reflects two convictions for manufacture or delivery of a controlled substance. Hill argues that one conviction on the mittimus should be corrected to reflect a conviction for possession of a controlled substance with intent to deliver and not manufacture or delivery of a controlled substance. The State agrees that the possession conviction was incorrectly recorded as a conviction for manufacture or delivery. Accordingly, we correct the convictions on Hill's mittimus to reflect one conviction for possession of a controlled substance with intent to deliver and one conviction for delivery of a controlled substance.

CONCLUSION

Although the trial judge violated Rule 431(b), Hill failed to show plain error that would trigger an automatic reversal in this case. Hill forfeited the argument that the trial court erred in refusing to rule on his motion *in limine* to bar the introduction of his prior convictions for impeachment purposes, as Hill failed to testify at trial. Hill failed to show that the trial court

1-08-2420

abused its discretion in imposing his concurrent 12-year sentences. Hill's mittimus is corrected to reflect 304 days of presentencing credit for time served and to reflect convictions for possession of a controlled substance with intent to deliver and delivery of a controlled substance.

Affirmed; mittimus corrected.