2019 IL App (1st) 161411-U

SIXTH DIVISION
NOVEMBER 15, 2019

No. 1-16-1411

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 7624 |
| | ) | |
| SAMUEL FRANKLIN, | ) | Honorable |
| | ) | Kerry M. Kennedy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant's conviction for vehicular hijacking is affirmed where the trial court did not consider inadmissible hearsay statements as substantive evidence, and a rational trier of fact could find the defendant took the vehicle by force or threat of imminent force. The trial court did not impose an excessive sentence or rely upon improper factors. Remanded as to the mittimus.

¶ 2    Following a bench trial in the circuit court of Cook County, the defendant-appellant, Samuel Franklin, was found guilty of vehicular hijacking, robbery, unlawful restraint, and possession of a controlled substance, and sentenced to a Class X term of 10 years' imprisonment

for vehicular hijacking. On appeal, the defendant contends that the trial court erroneously considered the victim's hearsay statements as substantive evidence, and that he was not proven guilty of vehicular hijacking beyond a reasonable doubt because the State failed to establish that he took the vehicle by force or by threatening the imminent use of force. He also argues that the trial court relied upon improper factors at sentencing, imposed an excessive sentence, and erroneously listed merged counts on the mittimus. For the following reasons, we affirm the defendant's conviction and sentence, and remand the case for correction of the mittimus.

¶ 3                                    BACKGROUND

¶ 4     The defendant was charged by indictment with one count each of vehicular hijacking (720 ILCS 5/18-3(a) (West 2014)), robbery (720 ILCS 5/18-1(a) (West 2014)), unlawful restraint (720 ILCS 5/10-3(a) (West 2014)), and possession of a controlled substance (720 ILCS 570/402(c) (West 2014)), arising from an incident in Bedford Park, Illinois on March 29, 2014.

¶ 5     Before trial, the court conducted an off-the-record conference pursuant to Supreme Court Rule 402 (eff. July 1, 2012), and offered the defendant a six-year sentence for a guilty plea. The defendant declined the offer. Later, the State offered an agreed sentence of five years for an amended count of attempt robbery, which the defendant also refused. The State then offered four years for attempt robbery, which the defendant rejected. Each sentence would have been served at 50%.

¶ 6     A bench trial commenced. Lorraine Brooks testified that she knew the defendant for approximately 13 years and lived with him "[o]n and off" for four years, until March 24, 2014. That day, she ordered him to leave her house, changed the locks, and took his clothes to his mother's house.

¶ 7    On March 29, 2014, Brooks drove to work at Walmart. At approximately 8:50 a.m., she was sitting in the employee area of the Walmart parking lot when she saw the defendant walking toward her vehicle. Brooks placed her keys in her right coat pocket and "cracked" the driver's side door. The defendant entered the vehicle, "pushed" Brooks to the passenger's seat, and said he needed the vehicle "to go to work." The defendant took the keys from Brooks, but she could not remember whether he said anything before taking them.

¶ 8    The State presented Brooks with her typed statement to Assistant State's Attorney Robert Foss and Bedford Park detective Andy Smuskiewicz, dated April 2, 2014. Brooks acknowledged giving the statement, signing each page, and stating that, before the defendant took the keys, he said, " 'I'm going to choke the s*** out of you.' " The following colloquy occurred:

"Q. Isn't it true, *** you told [ASA Foss] and [Detective Smuskiewicz] that, when [the defendant] got in the car, he started arguing with you about losing your [*sic*] job and asked you, Why did you do this to me?

A. It wasn't like an argument, he was just talking to me. He wasn't—

Q. Isn't it true that, when he got in the car, he reached behind you and locked the passenger side door?

A. I don't remember.

Q. Didn't you say that to [ASA Foss] and [Detective Smuskiewicz]?

A. I don't remember. I don't know."

¶ 9    Brooks further testified that the defendant started her vehicle and said they would "go back" to her house to talk, but she "overreact[ed]" and "started to get out of the car." The defendant "tried to pull" her inside, but she screamed for help and "got away," leaving her purse,

phone, wallet, and a crossing guard uniform inside the vehicle. She ran inside the Walmart. When Brooks returned to the parking lot shortly afterwards, her vehicle was gone. Brooks did not give the defendant permission to take her vehicle or possessions that day, but she did let him use her vehicle the previous week. Following the incident, she filed a police report and moved in with her mother.

¶ 10 The State published security footage from the Walmart parking lot, which Brooks agreed depicted the incident. The video, which lacks audio, is included in the record on appeal.

¶ 11 In the video, the defendant walks to the driver's side of Brooks' vehicle, opens the door, and leans inside. Brooks moves to the front passenger's seat, and the defendant enters the driver's seat and closes the door. A glare obscures the interior of the vehicle, but eventually, Brooks opens the passenger's door, exits, and faces the defendant with her arms in the vehicle. She leans away, and her feet slide on the pavement while she is tugged toward the vehicle. Brooks breaks away and runs off camera, and the defendant drives away.

¶ 12 Brooks further testified that on April 2, 2014, she went to her house and saw her vehicle for the first time since March 29, 2014. The keys were in her mail slot. Brooks called the police to "make sure [the house] was safe." She later spoke to the defendant about the case while he was in custody, but she did not recall whether they talked about her potential testimony. Brooks stated that she did not want to testify.

¶ 13 On cross-examination, Brooks stated that the defendant was her boyfriend at the time of trial. She was not afraid of him when she ordered him to leave her house on March 24, 2014, but was still upset when he approached her in the Walmart parking lot on March 29, 2014. The defendant did not yell, but because Brooks was "upset" and overreacted, she forgot that he

"always used [her] car on the weekends to go to work." The defendant did not hit her or push her from the vehicle, and she never told the defendant he could not use her vehicle that day. She did not recall whether the defendant threatened her or told her not to attend court.

¶ 14    On redirect examination, Brooks acknowledged speaking with Bedford Park police officer Michael Coppolillo in the Walmart parking lot. The following colloquy ensued:

"Q. Isn't it true that you told this officer, when he arrived within minutes of this happening, that [the defendant] appeared to be upset and started screaming and yelling at you about why you kicked him out of the house and he lost his job ***?

A. I don't remember.

Q. And isn't it true you also told him that [the defendant] continued yelling and screaming at you and saying, you are going with him and demanding the keys to your car?

A. It's been a while ago. I don't remember.

Q. Isn't it true that you also told him [that the defendant] was grabbing at your coat, demanding the keys and that your side door, the passenger, was unlocked, he reached over and locked it and kept demanding the key?

A. Yes.

Q. Isn't it true that you also told the officer, within minutes, the [d]efendant said to you, 'Lorraine, if you don't give me the keys, I'm going to choke the s*** out of you'?

A. Yes.

Q. Isn't it true that you told the officer, within minutes, that you kept trying to get away from [the defendant] and he was wrestling with you and grabbing at your coat?

A. Yes."

Brooks agreed she was "quite upset" when she entered Walmart following the incident.

¶ 15    Joseph Wagner Sr., a paramedic with the Bedford Park Fire Department, testified that he observed Brooks in the vestibule at Walmart. She was "almost hysterical," so Wagner approached to help. Wagner called Brooks' mother and radioed for the police.

¶ 16    Officer Coppolillo testified that Brooks was "very upset" when he met her in the Walmart parking lot. The State asked Officer Coppolillo what Brooks told him regarding "what [the defendant] was doing and what he said." Defense counsel objected, arguing that Brooks "admitted to most, if not all" of her statements to Officer Coppolillo, and therefore, Officer Coppolillo's testimony would not be impeaching. The trial court overruled the objection, and the State questioned Officer Coppolillo as follows:

"Q. What did [Brooks] tell you the [d]efendant did when he first got in the car?

A. Well, once he got into the car, he pushed her over to the passenger side, sat inside the driver's side, demanded the keys, he closed and locked the door.

Q. Did she indicate to you if he was yelling and screaming about why she kicked him out of the house and that he lost his job because of her?

[DEFENSE COUNSEL]: Objection, Judge.

***

A. Yes.

THE COURT: Overruled."

¶ 17    Bedford Park detective David Westin testified that he searched Brooks' house after her call on April 2, 2014. Brooks' car was parked outside. Afterwards, Detectives Westin and

Smuskiewicz arrested the defendant at his workplace. In the defendant's wallet, Detective Westin found a clear plastic baggy "with a white powdery substance" and two straws with "white powder residue." Detective Westin sent the items to the crime lab. The State entered a stipulation that a forensic chemist would testify the powder tested positive for 0.2 grams of heroin.

¶ 18    The State also entered Brooks' typed statement to ASA Foss and Detective Smuskiewicz, which essentially tracked her testimony. In the statement, Brooks added that the defendant "argue[d] with her about losing his job," asked " 'why did you do this to me,' " and "reached behind her and locked the passenger side door." According to the statement, the defendant also said, " 'give me the keys or I'm gonna choke the s*** out of you.' "

¶ 19    After the State rested, the defense rested without presenting any additional evidence.

¶ 20    Following closing arguments, the court found the defendant guilty on all counts. The court noted that Brooks was "definitely a reluctant witness." However, the court concluded that what Brooks "told *** the officers" -- including that the defendant "locked" the doors while she was in the vehicle -- and Wagner's observations about Brooks' "condition," belied her attempt to "wiggle off the hook" and "convince [the court] that this didn't happen."

¶ 21    In an amended motion for new trial, the defendant argued that he was not proven guilty beyond a reasonable doubt and that the security footage was admitted without proper foundation. The trial court denied the motion.

¶ 22    The defendant's presentence investigation (PSI) report listed nine narcotics convictions and one theft conviction from 1994 to 2011, with sentences ranging from one to seven years' imprisonment. The defendant was 45 years old at sentencing and reported a "good" relationship

with his parents and siblings. He graduated from high school, worked in quality control for two years before his arrest, and then worked in his jail dormitory for nine months. The defendant had two adult children with his ex-wife and dated Brooks for 13 years. He began using marijuana and alcohol as a teenager but stopped in 2003 and 2007, respectively. From 1998 to 2007, he used heroin every other day.

¶ 23    At the sentencing hearing, the State contended that the defendant's history of drug convictions reflected his choice "to lead a life of crime." Although Brooks "support[ed]" the defendant, the present offense was "egregious," "violent," and demonstrated that the defendant was "going to get what he wants when he wants it." The State sought 12 years' imprisonment.

¶ 24    In mitigation, defense counsel argued that the defendant had been "cooperative" and worked during his incarceration, and noted that Brooks was present in court and remained friends with him. Counsel asked for the minimum six-year sentence. In allocution, the defendant stated that he and Brooks were "still in [a] relationship," and requested leniency.

¶ 25    The trial court merged the counts into one count of vehicular hijacking, and sentenced the defendant to 10 years' imprisonment. In so holding, the court again noted that Brooks was a "very reluctant" witness, but stressed that she ultimately testified to what happened. The court noted that the defendant "schmoozed [Brooks] over the course of the case to get her not to testify against [him]," but was "playing games with her emotions" and "the system."

¶ 26    The defendant filed a motion to reconsider sentence alleging, in relevant part, that his sentence was excessive based on his background and the "nature" of his conduct during the offense. The trial court denied the motion, stating that the defendant "should probably stay away from [Brooks] because she doesn't need you and I don't think you should be with her," although

the court added that the matter was up to them. However, the court added that it did not know why Brooks "had any concern for [the defendant], because I certainly would not, *** after what *** happened in that video." The defendant subsequently appealed.

¶ 27                                    ANALYSIS

¶ 28    We note that we have jurisdiction to review the trial court's judgment, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. July 1, 2017).

¶ 29    On appeal, the defendant argues that: (1) Brooks' hearsay statements to Officer Coppolillo were substantively inadmissible; (2) he was not proven guilty of vehicular hijacking beyond a reasonable doubt; (3) his 10-year sentence for vehicular hijacking is excessive; (4) the trial court relied upon improper aggravating factors during sentencing; and (5) the mittimus should be corrected to reflect a single conviction for vehicular hijacking. We take each argument in turn.

¶ 30    The defendant first contends that Brooks' hearsay statements to Officer Coppolillo were substantively inadmissible because Brooks did not acknowledge them at trial. The defendant concedes that he forfeited this issue by not objecting at trial or raising it in a posttrial motion (see *People v. Kitch*, 239 Ill. 2d 452, 460-61 (2011)), but posits that we can review it as plain error or ineffective assistance of counsel.

¶ 31    The plain error doctrine allows a reviewing court to address forfeited claims when a "clear or obvious error occurred," and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."

(Internal quotation marks omitted.) *People v. Harvey*, 2018 IL 122325, ¶ 15. A defendant alleging ineffective assistance of counsel must show that (1) his counsel's performance was objectively unreasonable, and (2) a reasonable probability exists that the result of the trial would have been different but for counsel's deficiency. *People v. Henderson*, 2013 IL 114040, ¶ 11. Under either theory, the initial inquiry is whether a clear error transpired. *People v. Cox*, 2017 IL App (1st) 151536, ¶ 52.

¶ 32    Generally, an out-of-court statement offered to prove the truth of the matter asserted is inadmissible hearsay. *People v. Peterson*, 2017 IL 120331, ¶ 17. However, section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 2014)) provides, in relevant part, that a witness's out-of-court statement is substantively admissible if (1) the statement is "inconsistent" with the witness's trial testimony; (2) the witness is "subject to cross-examination" regarding the statement; (3) the statement "narrates, describes, or explains an event" in the witness's personal knowledge; and (4) the witness "acknowledge[s]" making the statement in her sworn trial testimony. 725 ILCS 5/115-10.1(a), (b), (c)(2)(B) (West 2014)).

¶ 33    Section 115-10.1 of the Code requires the trial court to determine whether the witness' prior statement was inconsistent with the witness' trial testimony, and to admit only those portions that were actually inconsistent. *People v. Wiggins*, 2015 IL App (1st) 133033, ¶ 36. "[W]hether a witness' prior testimony is inconsistent with his present testimony is left to the sound discretion of the trial court." *People v. Flores*, 128 Ill. 2d 66, 87-88 (1989); see also *People v. Campbell*, 2015 IL App (1st) 131196, ¶ 25. A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Chambers*, 2016 IL 117911, ¶ 68.

¶ 34    According to the defendant, the trial court erroneously admitted Brooks' statement to Officer Coppolillo as substantive evidence that the defendant pushed Brooks to the passenger side of the vehicle, demanded the keys, locked the door, and yelled at her for ordering him to leave her house and causing him to lose his job. The defendant argues that since Brooks did not acknowledge those statements in her trial testimony, it was error to consider it substantive evidence, which he maintains the trial court did.

¶ 35    Brooks testified that she talked to Officer Coppolillo shortly after the incident. On redirect examination, she did not remember telling Officer Coppolillo that the defendant appeared to be upset, or yelled at her for forcing him out of the house and causing him to lose his job. She also did not remember telling Officer Coppolillo that the defendant yelled that she was going with him. However, Brooks acknowledged telling Officer Coppolillo that the defendant grabbed her coat, demanded the keys, and reached over to lock the passenger side door. She also admitted telling Officer Coppolillo that the defendant said, " 'Lorraine, if you don't give me the keys, I'm going to choke the s*** out of you,' " and that she tried to "get away" from the defendant while he "wrestl[ed]" with her and "grabb[ed]" her coat.

¶ 36    Officer Coppolillo testified that Brooks told him that the defendant "got into the car, *** pushed her over to the passenger side, sat inside the driver's side, demanded the keys, *** [and] closed and locked the door." He also recalled Brooks stating that the defendant "yell[ed]" about "why [Brooks] kicked him out of the house and that he lost his job because of her[.]"

¶ 37    A comparison of Brooks' testimony regarding her statement to Officer Coppolillo, and Coppolillo's testimony about that statement, shows that Brooks acknowledged telling Officer Coppolillo that the defendant demanded her keys, locked the vehicle, and made physical contact

with her. Consequently, Officer Coppolillo's testimony regarding these statements by Brooks was substantively admissible. However, Brooks did not recall other statements that Officer Coppolillo attributed to her -- namely, that the defendant was upset, yelled at her for ordering him to leave her house and causing him to lose his job, and said she was "going with him." As Brooks did not acknowledge these statements, Officer Coppolillo's testimony regarding them was not substantively admissible.

¶ 38 The defendant argues that the trial court erroneously considered these latter statements for the truth of the matter asserted, as the court stated that it found him guilty based, in part, on what Brooks "told *** the officers." However, the record does not establish that the trial court specifically referred to, or relied upon, the statements that Brooks did not recall providing to Officer Coppolillo. To the contrary, the trial court, in its findings, only mentioned one fact from Officer Coppolillo's testimony about Brooks' statement: and that is that the defendant "locked the car doors." However, Brooks acknowledged that statement, and therefore, it was substantively admissible under section 115-10.1 of the Code.

¶ 39 Based on this record, the defendant has not shown that the trial court erroneously considered Brooks' unacknowledged statements to Officer Coppolillo. Absent an error, plain error review is unmerited and the defendant's forfeiture of the issue will be honored. Consequently, the defendant's alternative argument that he received ineffective assistance also fails. *People v. Moon*, 2019 IL App (1st) 161573, ¶ 47 (declining to address ineffective assistance of counsel where no error occurred).

¶ 40    The defendant next argues that he was not proven guilty of vehicular hijacking beyond a reasonable doubt because the State failed to establish that he took Brooks' vehicle by force or by threatening the imminent use of force.

¶ 41    When reviewing a challenge to the sufficiency of the evidence, the reviewing court must consider whether, viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. "[T]he standard of review gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (Internal quotation marks omitted.) *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). In applying this standard, "all reasonable inferences from the evidence must be allowed in favor of the State." *People v. Baskerville*, 2012 IL 111056, ¶ 31. "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Belknap*, 2014 IL 117094, ¶ 67.

¶ 42    A person commits vehicular hijacking when he "knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force" (720 ILCS 5/18-3(a) (West 2014)), including when the victim remains in the vehicle (*People v. Reese*, 2017 IL 120011, ¶ 42). Here, the defendant only challenges whether the State proved that he used or threatened force against Brooks.

¶ 43    In *People v. Aguilar*, 286 Ill. App. 3d 493, 497 (1997), we observed that the robbery statute uses "virtually identical" language to the vehicular hijacking statute regarding the element of force. An offender takes property through the use or threat of force when he "causes the

victim to part with possession or custody of property against his will." *People v. Dennis*, 181 Ill. 2d 87, 102 (1998). Notwithstanding, "it is unnecessary that the taking directly follow the force"; rather, "there need only be some concurrence between the defendant's threat of force and the taking of the victim's property, and it need not be shown that the force was exerted for the purpose of taking the property." *Aguilar*, 286 Ill. App. 3d at 498. The fact the victim does not resist does not negate the element of force. *Id.* Whether force or the threat of force was used is a question of fact, "and this court will not disturb that decision unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt." *People v. Cooksey*, 309 Ill. App. 3d 839, 849 (1999).

¶ 44 The evidence established that on March 29, 2014, Brooks was in her vehicle in the Walmart parking lot. The defendant approached Brooks' vehicle, "pushed" her to the passenger's seat, argued about losing his job, and asked why she "d[id] this" to him. Then, the defendant reached behind Brooks, locked the passenger side door, and threatened to " 'choke the s*** out of [her]' " unless she gave him the keys. The defendant wrestled with Brooks and grabbed at her coat. He took the keys and started the vehicle, told Brooks they were going to her house to talk, and when she exited the vehicle, tried to pull her inside. Brooks screamed and ran inside the Walmart, leaving her purse, phone, wallet, and other possessions in the vehicle. Wagner testified that Brooks was "almost hysterical" when he saw her in the store immediately after she fled her vehicle and the defendant in the parking lot. This evidence, viewed in the light most favorable to the State, establishes that the defendant took possession of Brooks' vehicle through force or the threat of imminent force.

¶ 45    The defendant, however, contends that the State failed to prove the element of force due to inconsistencies in Brooks' testimony, her written statement, and her statements to Officer Coppolillo. The defendant notes that Brooks testified he did not push her, yell, or argue in the vehicle, and she did not remember whether he locked the door or threatened to choke her if she did not give him the keys. As Brooks' testimony contradicted her out-of-court statements, the defendant posits that it is "less probable" that she was honest about whether he used or threatened force against her. We disagree.

¶ 46    The trial court received substantive evidence about the incident through Brooks' testimony, the inconsistent statements in her signed written statement, and the inconsistent statements that she acknowledged providing to Officer Coppolillo. See 725 ILCS 5/115-10.1(a), (b), (c)(2)(A) (substantive use of inconsistent writings signed by the witness) (West 2014)); 725 ILCS 5/115-10.1(a), (b), (c)(2)(B) (substantive use of inconsistent statements acknowledged by the witness) (West 2014)). The court was free to consider these out-of-court statements in the same manner as Brooks' testimony. *People v. Santiago*, 409 Ill. App. 3d 927, 933 (2011). Where Brooks' testimony conflicted with those statements, the trial court could accept or reject all or part of her testimony and determine how flaws in parts of her testimony affected her credibility as a whole. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85; see also *People v. Williams*, 332 Ill. App. 3d 693, 696-97 (2002) ("Prior inconsistent statements alone may be sufficient to support a conviction.").

¶ 47    Brooks testified that she spoke to the defendant while he was in custody, did not want to testify, and considered the defendant to be her boyfriend at the time of trial. Given these facts, the trial court could find that Brooks' substantively admissible out-of-court statements regarding

the defendant's use of force -- which she made shortly after the incident -- were more credible than her in-court testimony denying that the defendant used or threatened force against her. Further, while Brooks was impeached by Officer Coppolillo's testimony regarding certain out-of-court statements that she did not acknowledge making at trial, the court was free to weigh her credibility in view of all the circumstances. See *People v. Young*, 133 Ill. App. 3d 886, 892 (1985) ("an inconsistent extra judicial statement does not, *per se*, destroy the probative value of that witness' testimony," as "the trier of fact may accept the credibility of the witness notwithstanding the impeaching inconsistent statement").

¶ 48    Thus, the trial court could reasonably conclude that the defendant used force during the incident. This conclusion is supported by the fact that Brooks exited her vehicle without taking her personal possessions and felt "quite upset" when she entered the Walmart, as well as Wagner's testimony that Brooks was "almost hysterical." See *Jackson*, 232 Ill. 2d at 281 (the trier of fact is responsible for drawing reasonable inferences from the evidence). Moreover, while the surveillance video does not depict the events inside Brooks's vehicle, it broadly corroborates her account and does not negate any of the evidence that the defendant used force against her. Taking the evidence in the light most favorable to the State, a rational trier of fact could find that the defendant used force in committing vehicular hijacking. His claim of error is therefore meritless.

¶ 49    Next, the defendant contends that his 10-year sentence for vehicular hijacking is excessive based on the nature of his conduct, his nonviolent criminal history, and his rehabilitative potential.

¶ 50    When sentencing a defendant, a trial court must consider both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Hernandez*, 2016 IL 118672, ¶ 9. A trial court has "broad discretionary powers in imposing a sentence," and its decisions receive "great deference" because the trial judge "has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). Therefore, when a sentence falls within the statutory range, a reviewing court will disturb the sentence "only if the trial court abused its discretion in the sentence it imposed." *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). A sentence constitutes an abuse of discretion when it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). However, "the reviewing court *** must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53 (1999).

¶ 51    Vehicular hijacking is a Class 1 felony (720 ILCS 5/18-3(b) (West 2014)), with a sentencing range of 4 to 15 years (730 ILCS 5/5-4.5-30(a) (West 2014)). Here, the defendant's criminal history made him eligible to be sentenced as a Class X offender (730 ILCS 5/5-4.5-95 (West 2014)), with a range of 6 to 30 years (730 ILCS 5/5-4.5-25(a) (West 2014)). The defendant's 10-year sentence falls within these statutory guidelines, and therefore, is presumed proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 52    In this case, the defendant entered Brooks' vehicle, pushed her to the passenger's seat, threatened to "choke the s*** out of [her]" unless she gave him the keys, and seized them from

her pocket. When Brooks exited the vehicle, the defendant tried to pull her back until she broke away from him and fled. While Brooks denied that the defendant injured her or that she was afraid of him, evidence also showed that she was distraught and did not return home for several days. Video images of the incident show Brooks being "tugged" as she attempts to flee the car. When she finally returned to her home several days later, she asked the police whether it was "safe" for her to enter her home. The record also suggests that police then inspected the inside of her home when she returned. Given these facts, the trial court could find that the seriousness of the defendant's conduct outweighed his rehabilitative potential. *People v. Gomez*, 2011 IL App (1st) 092185, ¶ 87 (the trial court "is not required to give greater weight to the rehabilitative potential of a defendant than to the seriousness of the offense" (internal quotation marks omitted)). Indeed, although the defendant graduated from high school and worked prior to his arrest and in jail, he also has nine narcotics convictions and one theft conviction. While the defendant's criminal history is nonviolent and relates to substance abuse, neither factor mandates a reduced sentence. *People v. Hill*, 408 Ill. App. 3d 23, 30 (2011) (finding the defendant's lengthy, nonviolent, drug-related criminal history "certainly bears on [his] potential for rehabilitation"); *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) (criminal history alone may "warrant sentences substantially above the minimum"). Thus, while the defendant had not previously been sentenced to more than seven years' imprisonment, the trial court could reasonably conclude that he "was not deterred by previous, more lenient sentences." *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13. Given these facts, the defendant's 10-year sentence was not excessive.

¶ 53    In reaching this conclusion, we also reject the defendant's argument that his sentence was excessive in comparison to the plea offers he rejected, and that the trial court penalized him for proceeding to trial.

¶ 54    While the trial court cannot "penalize a defendant for choosing to exercise his right to stand trial," the mere fact the defendant received a greater sentence than one offered during plea bargaining "does not, in and of itself, support an inference that the greater sentence was imposed as a punishment for demanding trial." (Internal quotation marks omitted.) *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. Rather, it must be clearly evident from the court's "explicit remarks," or when "the actual sentence is outrageously higher than the one offered during plea negotiations." *Id.* In deciding the issue, "we consider the entire record rather than focus on a few words or statements of the trial court." *Id.*

¶ 55    Here, the trial court conducted an off-the-record conference pursuant to Supreme Court Rule 402 (eff. July 1, 2012), and apparently offered the defendant the minimum Class X sentence of six years in exchange for a guilty plea to either vehicular hijacking or robbery. As the conference was not transcribed, we have no way to determine what information was before the court when it made the offer. However, following the defendant's trial and sentencing hearing, the court was apprised of the circumstances of the offense and the defendant's criminal history. The detailed evidence which influenced the sentencing decision was not before the court during the plea decision and offer.

¶ 56    Nothing in the court's comments suggests that the court penalized the defendant for rejecting the plea offers, as the court referred to information adduced during the defendant's trial and sentencing hearing. See *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 35 (a defendant's

conduct "up to the time the court imposes the sentence" is relevant in formulating a penalty).

Moreover, some of the State's offers pertained to an amended count of attempt robbery with a Class 3 sentencing range of two to five years. See 720 ILCS 5/18-1(c) (West 2014) (robbery is Class 2 felony); 720 ILCS 5/8-4(c)(4) (West 2014) (the sentence for an attempt Class 2 felony is the sentence for a Class 3 felony); 730 ILCS 5/5-4.5-40(a) (West 2014) (the sentence for Class 3 felony is two to five years). Consequently, any comparison between the Class X sentence for vehicular hijacking, which the defendant received, and the Class 3 sentence for attempt robbery, which the defendant rejected, is meritless.

¶ 57    The defendant further contends that the trial court relied upon improper aggravating factors during sentencing, including speculation that he tried to convince Brooks not to testify and the court's subjective opinion about their relationship. The defendant acknowledges that he forfeited this issue by not objecting at trial or raising it in his postsentencing motion, but submits that this court can review the matter pursuant to the plain error doctrine or ineffective assistance of counsel. Under either theory, our first inquiry is whether a clear error occurred. *Cox*, 2017 IL App (1st) 151536, ¶ 52.

¶ 58    In determining whether the trial court relied on an improper factor, the reviewing court "will not focus on isolated statements but instead will consider the entire record." *People v. Walker*, 2012 IL App (1st) 083655, ¶ 30. The trial court is presumed to recognize and disregard incompetent evidence unless the record affirmatively shows the contrary (*In re N.B.*, 191 Ill. 2d 338, 345 (2000)), and "[a] cause must be remanded for resentencing only where the reviewing court is unable to determine the weight given to an improperly considered factor" (*People v. Beals*, 162 Ill. 2d 497, 509 (1994)). Thus, where the record reveals that the weight placed upon

an improperly considered aggravating factor was insignificant and did not lead to a greater sentence, remand is unnecessary. *Id.* The trial court's consideration of an improper factor when imposing a sentence is an abuse of discretion (*People v. Minter*, 2015 IL App (1st) 120958, ¶ 147), but whether the court considered an improper factor is a question of law reviewed *de novo* (*People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49).

¶ 59       The defendant has not shown that the trial court relied on improper factors at sentencing. Brooks testified that after the defendant took her vehicle, she was "quite upset," filed a police report, moved in with her mother, and asked the police to search her house before she returned. She later spoke with the defendant about the case, considered him to be her boyfriend at the time of trial, and did not want to testify against him. Thus, while Brooks did not recall whether she and the defendant discussed her potential testimony, or whether he threatened her or told her not to attend court, evidence suggested that Brooks' reluctance to testify related to her interactions with the defendant in the time after the incident and during the pendency of the defendant's prosecution. The court's observation that the defendant "schmoozed [Brooks] over the course of the case to get her not to testify" was a reasonable inference. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 92 ("a trial judge is allowed to make reasonable inferences from the evidence when sentencing a defendant"); see also *Abrams*, 2015 IL App (1st) 133746, ¶ 35.

¶ 60       Similarly, the record does not establish that the trial court sentenced the defendant based on its subjective feelings about the defendant's relationship with Brooks. While the court stated that the defendant "play[ed] games" with Brooks' emotions, this comment occurred while the court discussed why Brooks was reluctant to testify, and as we have explained, was grounded in the facts. Moreover, although the court also stated that the defendant "should probably stay away

from [Brooks] because she doesn't need you and I don't think you should be with her," nothing suggests that the court's personal opinion directed its sentencing decision. Rather, this comment squarely responded to the defendant's allocution, when he requested leniency and noted that he was "still in [a] relationship" with Brooks. See *Walker*, 2012 IL App (1st) 083655, ¶ 30. To the extent the court stated it did not understand Brooks' ongoing concern for the defendant based on the video of the incident, the court was free to comment on the nature and circumstances of the offense, including the severity of the defendant's conduct. *People v. Bowman*, 357 Ill. App. 3d 290, 304 (2005). As the defendant has not established that the trial court erroneously considered improper aggravating factors, his request for plain error review and his claim of ineffective assistance both lack merit.

¶ 61    Finally, the defendant asserts that the mittimus should be corrected to reflect a single conviction for vehicular hijacking because the trial court ordered the other counts merged into that single count.

¶ 62    On February 26, 2019, while this appeal was pending, our supreme court adopted new Illinois Supreme Court Rule 472, which sets forth the procedure in criminal cases for correcting sentencing errors in, as relevant here, the clerical errors in the record or written sentencing order. Ill. S. Ct. R. 472(a)(4) (eff. Mar. 1, 2019). On May 17, 2019, Rule 472 was amended to provide that "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). "No appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule unless that alleged error "has first

been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. May 17, 2019). Therefore, pursuant to Rule 472, we "remand to the circuit court to allow [the defendant] to file a motion pursuant to this rule," raising the alleged errors in the mittimus. Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 63                                    CONCLUSION

¶ 64     We remand the case as to the defendant's claim regarding the mittimus, and affirm the order of the trial court in all other respects.

¶ 65     Affirmed in part; remanded in part.