NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 170341-U

NO. 4-17-0341

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 22, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRIAN BIRGE, | ) | No. 16CF159 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding (1) the trial court properly admonished the jurors in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) the trial court did not deny defendant a fair sentencing hearing, (3) defendant was not denied effective assistance of counsel by counsel's failure to object to the restitution order, and (4) the trial court's restitution order complied with the requirements of the restitution statute.

¶ 2    In February 2017, a jury found defendant, Brian Birge, guilty of burglary (720 ILCS 5/19-1(a), (b) (West 2014)) and arson (720 ILCS 5/20-1(a)(1), (c) (West 2014)), both Class 2 felonies with mandatory Class X sentencing based on defendant's criminal history (730 ILCS 5/5-4.5-95(b) (West 2014)). The trial court sentenced defendant to concurrent terms of 24 years and 6 months' imprisonment and ordered him to pay the victim $117,230 in restitution.

¶ 3    Defendant appeals, arguing (1) the trial court failed to properly admonish the jurors in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) he was denied a fair sentencing hearing because the trial court erroneously considered (a) a factor inherent in the offense in aggravation and (b) no factors in mitigation when imposing sentence, (3) trial counsel was ineffective for failing to object to the restitution order, and (4) the restitution order is invalid for failing to set forth the manner in which restitution is to be paid. We affirm the trial court's judgment.

¶ 4                              I. BACKGROUND

¶ 5    In May 2016, the State charged defendant by information with burglary (count I) (720 ILCS 5/19-1(a) (West 2014)) and criminal damage to property (count II) (720 ILCS 5/21-1 (West 2014)). In June 2016, the State charged defendant by supplemental information with arson (count III) (720 ILCS 5/20-1(a)(1) (West 2014)). All three counts stemmed from defendant allegedly entering a business, Chief City Vapor, in Livingston County at approximately 1:30 a.m. on May 28, 2016, without authority, and knowingly damaging it by means of fire. Defendant faced mandatory Class X sentencing on counts I and III because of prior convictions. See 730 ILCS 5/5-4.5-95(b) (West 2014).

¶ 6                              A. Jury Trial

¶ 7    In February 2017, the case proceeded to a jury trial on counts I and III. (The State dismissed count II—criminal damage to property—prior to trial.) The State informed the trial court it previously extended a plea offer to defendant that included a 12-year prison sentence in exchange for defendant's agreement to plead guilty to both counts and pay the victim $117,230 in restitution. Defense counsel stated a counteroffer was tendered with a shorter term of imprisonment but did not reference a counteroffer reducing the amount of restitution to be paid.

¶ 8                                    1. *Voir Dire*

¶ 9          During *voir dire*, the trial court separated the venire into two groups and admonished each group regarding the principles enumerated in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) as follows:

> "THE COURT: This is a criminal case as I mentioned. The Defendant is presumed innocent. There are a number of propositions of law that you must be willing to follow if you are going to serve as a juror in this case. So I am going to recite those for you now. Please listen carefully as I will be asking if you understand these principles of law and if you accept these principles of law.
>
> A person accused of a crime is presumed to be innocent of the charge against him. The fact that a charge has been made is not to be considered as any evidence or presumption of guilt against the Defendant.
>
> The presumption of innocence stays with the Defendant throughout the trial and is not overcome unless from all of the evidence you believe the State proved the Defendant's guilt beyond a reasonable doubt.
>
> The State has the burden of proving the Defendant's guilt beyond a reasonable doubt. The Defendant does not have to prove his innocence. The Defendant does not have to present any evidence on his own behalf and does not have to testify if he does not wish to. If the Defendant does not testify, that fact must not be considered by you in any way in arriving at your verdict.
>
> So by a show of hands, do each of you understand these principles of law?
>
> PROSPECTIVE JURORS: (All hands raised.)
>
> THE COURT: Okay. And do each of you accept these principles of law?

PROSPECTIVE JURORS: (All hands raised.)"

¶ 10                                    2. *Evidence Presented*

¶ 11             Officer Brad Baird was on duty conducting routine patrol on May 28, 2016, at approximately 1:30 a.m. when an individual flagged him down to advise him a building—identified as the location of Chief City Vapor—was on fire. Baird was approximately one hundred feet from the building and saw smoke and flames. When he approached the building, Baird noticed the south-side door was ajar, the glass on the door had been broken, and "[t]here was glass laying in front of the door and in the doorway[.]" Officer Baird then discovered a trail of approximately 10 to 12 items that "appeared to come from the Chief City Vapor building" and led "towards the railroad tracks and to the east." The trail ultimately "led to an area southeast of the *** building where there were several boxes with hundreds of items."

¶ 12             Officer Jonathan Marion was on duty conducting routine patrol on May 28, 2016, at approximately 1:30 a.m. when he responded to a report of a structure fire at Chief City Vapor. Officer Marion saw "heavy smoke in the area" and "flames showing from inside the building." Marion testified Officer Baird, another officer, and the individual who flagged down Baird were already at the scene when he arrived. The only other person in the vicinity was an individual walking down a street located one block south of Chief City Vapor. Officer Marion approached the individual and identified him in court as defendant. Officer Marion noticed defendant's hand was bleeding. Defendant told Marion he "cut it on a lawn mower blade working on a lawn mower." Marion testified defendant was wearing "a coat and a hoodie with glass shards and plastic tags stuck to his clothing and his legs." Defendant consented to a search of his person. Officer Marion recovered two pairs of pliers, a large amount of change, a set of keys, a lighter, and approximately $115 in cash. Marion also testified defendant told him he (defendant) did not

start the fire, even though Marion never asked defendant about the fire and the fire was not visible from where they were standing.

¶ 13　　　　　Tom Roe testified he owned Chief City Vapor. He did not give anyone permission to enter the building after the store closed on the night of the fire. Roe kept change and approximately $100 in cash in the store's cash register; the keys discovered on defendant's person unlocked the outbuildings on the property; and the keys were always stored in his desk located inside of the building. Roe also identified the trail of items discovered outside of the building as property of his business. When asked about the damage the fire caused, Roe testified, "We had to gut the entire building down to pulling the studs, pulling the insulation, furnace. I mean, everything was lost[,]" including the merchandise and furniture.

¶ 14　　　　　Defendant testified he "had overdosed on drugs" approximately 12 hours prior to the fire and had been hospitalized. When discharged, defendant's mother dropped him off at "Aly Anne's" to gamble, which was located close to where Officer Marion later questioned defendant. Defendant testified he did not remember many of the details from the relevant time because he was heavily medicated, drinking, and using drugs. He testified he remembered leaving Aly Anne's and walking to his sister's house. Defendant knocked on the door, but his sister did not answer so he decided to return to Aly Anne's to continue gambling. On his walk back, he observed "some commotion going on" and people "running back and forth from a vehicle" parked near Chief City Vapor. He watched as they drove away. Defendant then noticed "stuff scattered on the road over across the [railroad] tracks." One of the items was a jacket, which he put on. Defendant testified he went through the pockets of the jacket and cut his hand on glass. He remembered talking to Officer Marion "a little bit" but did not recall discussing the

cut on his hand. Defendant denied any involvement with the fire and testified he "never even set foot on that facility whatsoever."

¶ 15    Following closing arguments, the jury found the State proved defendant guilty of both counts beyond a reasonable doubt.

¶ 16                                    B. Sentencing Hearing

¶ 17    At a March 2017 sentencing hearing, a presentence investigation report (PSI) was admitted without objection. It showed defendant had four prior felony convictions—aggravated criminal sexual abuse, residential burglary, unlawful possession of a controlled substance, and theft—and two felony probation revocations. Defendant reported no physical or mental health issues but did report a history of substance abuse. The PSI also recommended the trial court order defendant to pay restitution to the victim. Although a letter had been sent to the victim requesting restitution information, the victim had not responded. The PSI noted defendant "may have difficulty paying" restitution.

¶ 18    The State recommended a sentence in excess of 20 years, arguing the following factors in aggravation: (1) defendant's criminal history, (2) his conduct caused serious harm, and (3) deterrence. The State also requested defendant pay $117,230 in restitution; defendant did not object to the State's request. Defendant recommended the minimum sentence permissible by statute, offering the following in mitigation: (1) he attempted suicide shortly before commission of the crimes and (2) he was under the "residual[ ]" influence of "a variety of substances" at the time.

¶ 19    The trial court stated the following in regard to the applicable aggravating and mitigating factors:

"THE COURT: *** I don't want there to be any suggestion in the record that the Court is somehow double enhancing on [defendant's] prior record. It's, it is not a good record. But in terms of an aggravating factor, I do recognize that it is the basis for the enhancement to the Class X sentencing.

But I bring that up as the first point because it is a serious, serious case; and one of the factors the Court is to consider is deterrence. That's a very strong factor I guess depending on the type of case that we're dealing with. But in this case, deterrence is a very strong factor for the Court to consider.

We see a lot of stuff in Livingston County that's not good, a lot of drug related offenses; and I understand that [defendant] believes that in part this is related to drug offenses or a drug addiction. But what we see typically with drug cases are people harming themselves or perhaps, not to minimize it, but less serious property crimes such as, you know, stealing change or something like that. Still a serious matter but the lack of respect for somebody's property when you are talking about items of change located in a car versus causing substantial harm to somebody's business I think are two very different things.

***

There simply is no set of circumstances at all that justify what happened here. *** The testimony or the story from [defendant] was perhaps not bizarre but pretty close. It was pretty inconsistent and not very logical which I think the jury found to not be credible, and I think based upon my assessment of it I didn't think [defendant] was all that credible either. And [I] say that because the other matters that get raised such as excuses for your conduct here, they don't carry a lot of

weight when it appears that you are going to say and do anything that you feel like at the moment.

You know, in general I try to have pretty, I have faith I guess in people that deep down most people want to do what's right. Most people try to do what's right. Addicts have a very difficult time with that, but primarily they hurt themselves. You're not the same type of addict that we're accustomed to dealing with in here because you don't just harm yourself. You harm the community around you in big ways. You have absolutely no respect for anybody's home, business, property. Like I said, if you are stealing change out of a car, that's one thing. Breaking into people's homes, that's a residential burglary. Breaking into people's businesses and destroying them?

\* \* \*

So I do think that deterrence is a factor. Obviously your conduct caused serious harm. And your prior record not just the factor or not just the convictions that caused, are cause for the enhancement but your other record as well. You consistently have demonstrated a lack of regard for society, rules, other people, so there's just no way in this case that a minimum sentence would be appropriate.

I do not believe there are any [mitigating] factors here. I recognize [defendant] thinks that he might have overdosed the night before. Maybe he did. That still doesn't excuse the conduct. \*\*\* And so I can't imagine wanting to have you back here anytime soon for the protection of the community."

¶ 20     The trial court sentenced defendant on both counts to 24 years and 6 months' imprisonment, with the sentences to run concurrently. The court also ordered defendant to pay

the victim $117,230 in restitution. The written restitution order stated the following: "Defendant shall pay all said restitution ***, in any event within five (5) years after this date, and as follows: *** full payment within 12 months after defendant's release from imprisonment in this case."

¶ 21                    C. Motion to Reconsider Sentence and Hearing

¶ 22          On March 23, 2017, defendant filed a motion to reconsider sentence. Defendant argued the sentence was excessive in light of the evidence presented and the court failed to consider the following mitigating factors: (1) defendant did not contemplate his criminal conduct would cause or threaten serious harm, (2) there were substantial grounds tending to excuse or justify defendant's criminal conduct "in that [he] was recently hospitalized for an attempted suicide from an overdose of medication and other substances," (3) defendant's conduct was the result of circumstances unlikely to recur if he receives the proper addiction and mental health treatment, (4) his imprisonment would entail excessive hardship to his dependents, and (5) his imprisonment would endanger his medical condition. See 730 ILCS 5/5-5-3.1(a)(2), (4), (8), (11), (12) (West 2014).

¶ 23          On April 25, 2017, the trial court conducted a hearing on defendant's motion. Defense counsel stated: "The thing we wanted the Court to reconsider really was the fact [defendant] had been recently hospitalized just prior to this incident occurring and had just been released from the emergency room *** after attempting suicide taking several medications." The trial court denied defendant's motion, reasoning as follows:

> "THE COURT: Well, there are a number of mitigating factors in this case. There's aggravating factors in this case which, all of which were discussed and weighed in great detail at the original sentencing hearing. I haven't heard

anything new here today that was not previously brought to the Court's attention or considered by the Court.

So I think the sentence is within the range prescribed by statute. I think that the Court properly balanced the factors in aggravation in mitigation, specifically the mitigating factors raised again today. And I believe that the aggravating factors here do outweigh the mitigating factors, and the sentence is appropriate so the motion to reconsider the sentence is denied."

¶ 24    This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26    On appeal, defendant argues (1) the trial court failed to properly admonish the jurors in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) he was denied a fair sentencing hearing because the trial court erroneously considered (a) a factor inherent in the offense in aggravation and (b) no factors in mitigation when imposing sentence, (3) trial counsel was ineffective for failing to object to the restitution order, and (4) the restitution order is invalid for failing to set forth the manner in which restitution is to be paid.

¶ 27                         A. Juror Admonishments

¶ 28    Defendant first argues the trial court failed to properly admonish the prospective jurors as set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). He contends the trial court "impermissibly conflated all four principles" in the rule and asked whether the prospective jurors understood and accepted this "one broad instruction" rather than asking if the prospective jurors understood and accepted each individual principle. Defendant concedes he forfeited this argument by failing to object at trial and raise the alleged error in a posttrial motion but asks this

- 10 -

court to review it under the first prong of the plain-error doctrine. See *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675.

¶ 29 Under the plain-error doctrine, we may consider a forfeited claim when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007). The first step in plain-error analysis is to determine whether clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49. We will review *de novo* whether the trial court committed clear or obvious error by failing to comply with Rule 431(b). See *People v. Thompson*, 238 Ill. 2d 598, 606, 939 N.E.2d 403, 409 (2010).

¶ 30 Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) requires trial courts to read four principles of law to prospective jurors and determine whether they understand and accept those principles. It states:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no

inquiry of a prospective juror shall be made into the defendant's

decision not to testify when the defendant objects.

　　　　The court's method of inquiry shall provide each juror an

opportunity to respond to specific questions concerning the

principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1,

2012).

¶ 31　　　　Our supreme court has interpreted the language of Rule 431(b) to mandate a

"specific question and response process." *Thompson*, 238 Ill. 2d at 607. "The trial court must ask

each potential juror whether he or she understands and accepts each of the principles in the rule."

*Id.* Next, "the rule requires an opportunity for a response from each prospective juror on their

understanding and acceptance of those principles." *Id.* Citing *Thompson*, this court, in *People v.*

*Curry*, 2013 IL App (4th) 120724, ¶ 65, 990 N.E.2d 1269, made the following suggestion to trial

courts regarding compliance with Rule 431(b):

　　　　"Indicate to the potential jurors the court will go over some

principles of law to ensure they understand and accept the

principles of law. Thereafter, read verbatim the four principles

outlined in Rule 431(b). Then, ask jurors individually or in a group

whether they understand and accept the principles, giving each

juror an opportunity to respond in a manner that ensures his or her

understanding and acceptance or lack thereof, is a matter of

record."

¶ 32　　　　The trial court in this case followed both the "specific question and response

process" outlined in *Thompson* and this court's suggestion in *Curry*. The trial court first

indicated to the prospective jurors it would ask them if they understood and accepted certain principles of law. Thereafter the court read each of the four principles outlined in Rule 431(b). Then, the court asked the prospective jurors whether they understood the principles and whether they accepted the principles. The prospective jurors affirmatively responded they understood and accepted the principles. Rule 431(b) requires nothing further. See *Thompson*, 238 Ill. 2d at 607. Thus, we find no error occurred with the Rule 431(b) admonishments in this case.

¶ 33            Defendant nevertheless argues compliance with Rule 431(b) requires the trial court to ask for juror acceptance and understanding after recitation of each individual principle, not after recitation of all four principles. Defendant relies on *People v. Othman*, 2019 IL App (1st) 150823, for this proposition. In *Othman*, the First District stated the following regarding compliance with Rule 431(b):

> "In criminal trials, Illinois judges are required to ask the
> venire eight simple questions: (1) defendant is presumed innocent:
> (a) do you understand that? (b) do you accept it?; (2) defendant is
> not required to offer any evidence on his own behalf: (a) do you
> understand that? (b) do you accept it?; (3) defendant must be
> proved guilty beyond a reasonable doubt by the State: (a) do you
> understand that? (b) do you accept it?; and (4) the failure of
> defendant to testify on his own behalf cannot be held against him:
> (a) do you understand that? (b) do you accept it?" *Id.* ¶ 60.

¶ 34            To the extent *Othman* may be inconsistent with our conclusion here, we note we are not bound by the First District's decision. See *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 26, 80 N.E.3d 72; see also *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d

421, 440, 892 N.E.2d 994, 1006-07 (2008) ("[T]he opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels."). Even if *Othman* was binding authority, we would not find clear or obvious error in this case as *Othman* was decided two years after defendant's trial. See *People v. Williams*, 2015 IL App (2d) 130585, ¶ 11, 33 N.E.3d 608 ("Plain-error review is reserved for errors that are clear or obvious based on law that is well settled at the time of trial; if the law was unclear at the time of the trial, but becomes clear (*i.e.*, settled) during the appeal, then the error is not plain for purposes of the plain-error doctrine." (Internal quotation marks omitted.)). Because no clear or obvious error occurred, we need not address whether the evidence was closely balanced, and we will honor defendant's forfeiture of his Rule 431(b) argument. See *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 659-60 (2008).

¶ 35                                  B. Sentencing Hearing

¶ 36          Defendant next argues he was denied a fair sentencing hearing because the trial court erroneously considered (1) a factor inherent in the offense in aggravation and (2) no factors in mitigation when imposing his sentence.

¶ 37                                  1. *Aggravating Factors*

¶ 38          Defendant contends it "was improper for the trial court to consider in aggravation at sentencing that [he] caused 'substantial harm' to the business, to himself, and to the community" because his conduct caused no greater harm than that which was inherent in the offense. He states we "should apply the same analysis to the felony crimes of burglary and arson" but cites no authority in support of this proposition. The State concedes harm "may be" inherent in the offense of arson, but argues it is not inherent in the offense of burglary. Defendant does not respond to the State's argument in his reply brief, and we therefore decline to accept his

conclusory assertion it is improper for a trial court to consider harm as a factor in aggravation when sentencing a defendant convicted of burglary.

¶ 39    The Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2014)) lists mitigating and aggravating factors the trial court must consider when determining an appropriate sentence. One such factor the trial court may consider in aggravation is whether "the defendant's conduct caused or threatened serious harm ***." 730 ILCS 5/5-5-3.2(a)(1) (West 2014). The trial court cannot, generally speaking, use this factor as an aggravating factor in sentencing if it is implicit in the offense for which the defendant was convicted. See *People v. Phelps*, 211 Ill. 2d 1, 11-12, 809 N.E.2d 1214, 1220 (2004) ("Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense. [Citation.] Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' " (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84, 600 N.E.2d 1189, 1191 (1992))). This dual use of a single factor is referred to as a "double enhancement." *Id.* at 12.

¶ 40    Our supreme court has explained when a trial court may diverge from the general rule and properly consider in aggravation a factor that is arguably implicit in the offense:

    "[T]he commission of any offense, regardless of whether the
    offense itself deals with harm, can have varying degrees of harm or
    threatened harm. The legislature clearly and unequivocally
    intended that this varying quantum of harm may constitute an
    aggravating factor. While the classification of a crime determines
    the sentencing range, the severity of the sentence depends upon the

*degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.*" (Emphases in original.) *People v. Saldivar*, 113 Ill. 2d 256, 269, 497 N.E.2d 1138, 1143 (1986).

Thus, when considering whether to find "serious harm" an aggravating factor, "the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 67, 129 N.E.3d 755. We review *de novo* whether the trial court relied upon an improper factor at sentencing. See *Id.* ¶ 65.

¶ 41        Even assuming "serious harm" is a factor implicit in the offense of arson, the trial court properly considered that factor in aggravation because defendant's conduct caused a degree of harm far greater than that which would have been caused by the minimum conduct necessary to commit the offense. "A person commits arson when, by means of fire or explosive, he or she knowingly *** [d]amages any real property, or any personal property having a value of $150 or more, of another without his or her consent ***." 720 ILCS 5/20-1(a)(1) (West 2014). Here, defendant did not merely damage the victim's building; as the trial court noted at sentencing, defendant essentially "destroy[ed]" the building. The victim testified at trial he "had to gut the entire building down to pulling the studs, pulling the insulation, furnace." He further testified "everything was lost[,]" including all of the merchandise and furniture located in the building. Accordingly, we conclude the trial court properly considered the serious harm caused by defendant's conduct in aggravation when determining the severity of his sentence.

¶ 42                              2. *Mitigating Factors*

¶ 43    Defendant also argues the trial court denied him a fair sentencing hearing "when it failed to find any applicable mitigating factors." Specifically, defendant contends the trial court should have considered the following mitigating factors: (1) he did not contemplate his conduct would cause or threaten serious harm, (2) his conduct was the result of circumstances unlikely to recur if he received addiction and mental health treatment, and (3) his imprisonment would endanger his medical condition. See 730 ILCS 5/5-5-3.1(a)(2), (8), (12) (West 2014).

¶ 44    As noted above, the Unified Code lists mitigating factors the trial court must consider when determining an appropriate sentence. See 730 ILCS 5/5-5-3.1 (West 2014). However, "[t]he trial court has no obligation to recite and assign value to each factor presented at a sentencing hearing. [Citation.] Where mitigating evidence is presented to the trial court during the sentencing hearing, we may presume that the trial court considered it, absent some indication *** to the contrary." *People v. Hill*, 408 Ill. App. 3d 23, 30, 945 N.E.2d 1246, 1253 (2011). "The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence *** unless it is clearly evident the sentence was improper." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29, 82 N.E.3d 693.

¶ 45    Reviewing courts give great deference to the trial court's sentencing judgment "because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 214, 940 N.E.2d 1062, 1066 (2010). "The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." (Internal

- 17 -

quotations and citations omitted.) *Id.* Accordingly, we "may not alter a defendant's sentence absent an abuse of discretion by the trial court." *Id.* at 212.

¶ 46 Defendant attempts to affirmatively rebut the presumption the trial court properly considered the mitigating evidence presented by pointing to an alleged contradiction between two statements made by the trial court. At the sentencing hearing, the trial court stated, "I do not believe there are any [mitigating] factors here"; yet at the hearing on defendant's motion to reconsider, the court stated, "there are a number of mitigating factors in this case." When viewing the record *as a whole*, these two statements do not contradict one another. The former statement merely indicates the trial court found no mitigating factors outweighed the applicable aggravating factors, not, as defendant argues, that the trial court failed to even consider the mitigating evidence presented.

¶ 47 On the contrary, the record clearly shows the trial court considered the mitigating factors defendant raises on appeal. The trial court heard the evidence presented at trial, including defendant's testimony regarding (1) the events surrounding the commission of the crime, (2) his substance abuse problems, and (3) his overdose and hospitalization prior to the night of the offense but "didn't think [defendant] was all that credible ***." The court stated it would not give much weight to the mitigating factors defendant raised as "they don't carry a lot of weight when it appears that you are going to say and do anything that you feel like at the moment." The trial court further discussed defendant's drug addiction and found it was outweighed by the serious harm he caused, especially in comparison to the harm caused by others struggling with drug addiction problems in Livingston County, and by his extensive criminal history, which included four prior felony convictions and two felony probation revocations. The record indicates the court properly considered the mitigating factors defendant raises on appeal, found

- 18 -

them to be outweighed by the applicable aggravating factors, and did not give them much weight because it did not find defendant credible.

¶ 48    We find defendant failed to satisfy his burden to affirmatively rebut the presumption the trial court properly considered the relevant mitigating evidence and conclude the trial court did not abuse its discretion in sentencing defendant to concurrent terms of 24 years and 6 months' imprisonment.

¶ 49                                    C. The Restitution Order

¶ 50    Defendant next argues the trial court's restitution order is invalid because (1) it lacks a sufficient evidentiary basis for the $117,230 amount (see 730 ILCS 5/5-5-6(b) (West 2014) ("[T]he court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim ***.")) and (2) does not set forth the manner in which restitution is to be paid (see 730 ILCS 5/5-5-6(f) (West 2014) ("[T]he court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time *** within which payment of restitution is to be paid in full.")). Defendant did not object to the restitution order in the trial court.

¶ 51             1. *Compliance With Section 5-5-6(b) of the Unified Code*

¶ 52    Defendant contends the trial court's restitution order is in violation of section 5-5-6(b) of the Unified Code (730 ILCS 5/5-5-6(b) (West 2014)) because the "restitution number had no evidentiary basis and was simply declared by the State and accepted by the court." Defendant argues trial counsel rendered ineffective assistance by failing to object to this alleged lack of evidentiary support for the amount. Alternatively, he contends the trial court committed plain error by entering a restitution order without a sufficient evidentiary basis.

¶ 53                    a. Ineffective Assistance of Counsel

- 19 -

¶ 54          Criminal defendants have a constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Specifically, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601. "When a claim of ineffective assistance of counsel was not raised at the trial court, our review is *de novo*." *Hibbler*, 2019 IL App (4th) 160897, ¶ 88.

¶ 55          Even assuming counsel's performance was deficient, defendant's ineffective-assistance claim still fails because he cannot demonstrate prejudice. Defendant makes no argument the restitution amount was incorrect. Instead, he merely asserts the result would have been different "because the restitution amount would either be supported by evidence, altered, or would not have been ordered at all." Defendant admits it is possible the amount would have been supported by evidence even if counsel had objected, and thus, the result of the proceeding would not have been different. Given the victim's testimony he "had to gut the entire building" and "everything was lost" in the fire, we believe the restitution amount is not unsupported by the evidence in the record. Defendant's failure to demonstrate he was prejudiced by counsel's performance "precludes a finding of ineffectiveness." *Simpson*, 2015 IL 116512, ¶ 35.

¶ 56                                    b. Plain Error

¶ 57          Alternatively, defendant contends the trial court committed plain error by entering

a restitution order without a sufficient evidentiary basis. Relying on *People v. Jones*, 206 Ill.

App. 3d 477, 564 N.E.2d 944 (1990), defendant asks this court to review this forfeited claim

under the second prong of the plain-error doctrine because sentencing "affects [his] fundamental

right to liberty." "The ultimate question of whether a forfeited claim is reviewable as plain error

is a question of law that is reviewed *de novo*." *People v. Johnson*, 238 Ill. 2d 478, 485, 939

N.E.2d 475, 480 (2010).

¶ 58          In *Jones*, the Second District found the trial court erred by ordering the defendant

to pay restitution in an amount "unsupported by the evidence ***." *Jones*, 206 Ill. App. 3d at

482. The *Jones* court further "notice[d] such error under the plain[-]error [doctrine]" because

"[p]lain error may be considered where, as here, the record clearly shows that an alleged error

affecting substantial rights was committed." *Id.* This court has declined to follow the Second

District's decision in *Jones*. See *People v. Hanson*, 2014 IL App (4th) 130330, ¶ 36, 25 N.E.3d

1. In *Hanson*, this court stated the following:

> " '[I]t is not a sufficient argument for plain[-]error review to
>
> simply state that because sentencing affects the defendant's
>
> fundamental right to liberty, any error committed at that stage is
>
> reviewable as plain error. Because all sentencing errors arguably
>
> affect the defendant's fundamental right to liberty, determining
>
> whether an error is reviewable as plain error requires more in-
>
> depth analysis.' " *Id.* ¶ 37. (quoting *People v. Rathbone*, 345 Ill.
>
> App. 3d 305, 311, 802 N.E.2d 333, 338 (2008)).

¶ 59          This court rejected the defendant's claim in *Hanson* "that the trial court committed plain error by accepting the State's representation that the restitution amount was $490.82 without requiring that further evidence be presented to prove the accuracy of that amount." *Id.* ¶ 40. We stated further:

> "[The restitution statute] does not mandate that the court fix the amount of restitution based upon any specific type of evidence, nor does the statute prohibit the parties from stipulating as to the proper amount (which is essentially what happened here when neither defendant nor his counsel contested the $490.82 figure). Given the specificity of the *** figure, we doubt that the State just made up that amount without any basis for requesting it. The only alleged error is the absence of some type of auto-shop receipt or testimony in the record proving that the victim incurred $490.82 in damage to her car. We cannot accept that this type of error is 'sufficiently grave that it deprived the defendant of a fair sentencing hearing' [citation] or such an affront to defendant's substantial rights [citation] that it cannot be subject to forfeiture ***." *Id.*

¶ 60          We initially note defendant's plain error argument is simply the sentencing error "affects [his] fundamental right to liberty"; he fails to engage in the "more in-depth analysis" necessary to determine whether the alleged error is reviewable as plain error. *Id.* ¶ 37. Moreover, we find the alleged error here—the lack of some receipt or testimony in the record proving the restitution amount—was not sufficiently grave that it denied defendant a fair sentencing hearing.

As we noted in *Hanson*, the restitution statute "does not mandate that the court fix the amount of restitution based upon any specific type of evidence," and, "[g]iven the specificity of the [$117,230] figure, we doubt that the State just made up that amount without any basis for requesting it." *Id.* ¶ 40. It is likely the trial court simply ordered defendant to pay restitution in the stated amount without further evidentiary support because the parties had discussed restitution and agreed as to the proper amount of restitution. Neither defendant nor his counsel contested the amount of restitution referenced by the State when the parties discussed plea negotiations with the court or when the State requested restitution at the sentencing hearing. Accordingly, we conclude defendant's forfeited claim is not reviewable as plain error and we do not address it on the merits. See *id.* ¶ 41.

¶ 61                    2. *Compliance With Section 5-5-6(f) of the Unified Code*

¶ 62          Defendant also contends the trial court's restitution order is in violation of section 5-5-6(f) of the Unified Code (730 ILCS 5-5-6(f) (West 2014)) because the court (1) specified "two time frames" in which the payment was to be made and (2) did not specify the manner of payment, *i.e.*, single payment or installments. Defendant acknowledges forfeiture of this argument and asks this court to review his argument under the second prong of the plain-error doctrine. Alternatively, defendant contends counsel rendered ineffective assistance by failing to object to an invalid restitution order. Because we find no error occurred, we reject both of defendant's contentions.

¶ 63          Section 5-5-6(f) of the Unified Code provides, in pertinent part, the trial court "shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years, *** not including periods of incarceration, within which payment of restitution is to be paid in full." 730 ILCS 5/5-5-6(f) (West 2014).

- 23 -

"Compliance with this statute is mandatory." (Internal quotation marks omitted.) *Hibbler*, 2019 IL App (4th) 160897, ¶ 82. "We review the validity of a restitution order *de novo*." *People v. Moore*, 2013 IL App (3d) 110474, ¶ 7, 990 N.E.2d 1264.

¶ 64  The trial court's written restitution order states the following: "Defendant shall pay all said restitution \*\*\*, in any event within five (5) years after this date, and as follows: \*\*\* full payment within 12 months after defendant's release from imprisonment in this case." Defendant contends the restitution order gives two conflicting dates by which the payment is to be made (*i.e.*, (1) within five years of this date and (2) within 12 months after defendant's release from imprisonment). However, the language containing the five-year time period is merely an attempt to incorporate the general statutory mandate that the time period cannot be "in excess of 5 years, \*\*\* not including periods of incarceration \*\*\*." 730 ILCS 5/5-5-6(f) (West 2014). This language does not apply to defendant's specific case because the trial court indicated in his case he is to pay "within 12 months after [his] release from imprisonment," which complies with the five-year limit mandated by statute. The trial court's restitution order also properly indicates the manner in which defendant is to pay. The written order contains an option for "monthly payments" or "full payment." Here, the trial court selected "full payment," which indicates defendant is to make a single payment as opposed to installments. Thus, the order clearly indicates both (1) the time period—within 12 months of his release from prison—and (2) the manner—single payment—in which the restitution is to be paid. Accordingly, we find the trial court complied with the restitution statute and the restitution order is valid.

¶ 65        III. CONCLUSION

¶ 66  For the reasons stated, we affirm the trial court's judgment.

¶ 67  Affirmed.